**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| CHARLES FOSTER, individually and on behalf of others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Civil Action No.:  1:21-cv-360 |
| v. ) ) | **CLASS ACTION COMPLAINT** |
| MIDWESTERN PET FOODS, INC., an Indiana Corporation ) ) | **DEMAND FOR JURY TRIAL** |
| Defendant. ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff Charles Foster ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint for damages and equitable relief against Midwestern Pet Foods, Inc. ("Midwestern" or "Defendant").  Plaintiff bases these allegations on personal knowledge as to matters related to and known to him, and based on information and belief as to all other matters.

## NATURE OF THE ACTION

1.      Plaintiff brings this case on his own behalf and on behalf of all other consumers nationwide who are pet owners that purchased Defendant's pet food products containing excessive levels of aflatoxin, a toxin created by the mold *Aspergillus flavus.*  At high levels, aflatoxin can result in illness and death of cats and dogs.

2.      Defendant manufactures, warrants, advertises, and sells a variety of pet foods under several brand names, including Sportmix CanineX, Earthborne Holistic, Pro Pa, Venture, Wholesomes, Sportmix, Sportstrail, Splash, Nunn Better and Unrefined ("Pet Food Products" or "Products.")

3.      On or around December 30, 2020, Defendant announced a recall of three formulas of cat and dog food products as follows:  Sportmix Energy Plus, Sportmix Premium High Energy and Sportmix Original Cat.  According to Defendant's news announcement, tests indicated that the recalled products contained "levels of Aflatoxin that exceed acceptable limits."  Aflatoxin is a toxic mold that can result in illness or death if ingested.  On or around the same day, the Food and Drug Administration ("FDA") published news about Defendant's recall and reported that several dogs had fallen ill or died after consuming Defendant's Sportmix products.

4.      On January 11, 2021, Defendant announced it was expanding the list of recalled pet foods.[1]  The recalled products all expire on or before July 9, 2022 and are identified as:

• Pro Pac Adult Mini Chunk, 40 lb. bag

• Pro Pac Performance Puppy, 40 lb. bag

• Splash Fat Cat 32%, 50 lb. bag

• Nunn Better Maintenance, 50 lb. bag

• Sportstrail, 50 lb. bag

• Sportmix Original Cat, 15 lb. bag

• Sportmix Original Cat, 31 lb. bag

• Sportmix Maintenance, 44 lb. bag

• Sportmix Maintenance, 50 lb. bag

• Sportmix High Protein, 50 lb. bag

• Sportmix Energy Plus, 44 lb. bag

• Sportmix Energy Plus, 50 lb. bag

---

[1] U.S. FOOD & DRUG ADMIN., FDA Alert:  Certain Lots of Sportmix Pet Food Recalled for Potentially Fatal Levels of Aflatoxin (Jan. 26, 2021), https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin.

- Sportmix Stamina, 44 lb. bag

- Sportmix Stamina, 50 lb. bag

- Sportmix Bite Size, 40 lb. bag

- Sportmix Bite Size, 44 lb. bag

- Sportmix High Energy, 44 lb. bag

- Sportmix High Energy, 50 lb. bag

- Sportmix Premium Puppy, 16.5 lb. bag

- Sportmix Premium Puppy, 33 lb. bag

5.     Defendant has marketed and advertised its Pet Food Products as suitable for animals, has represented that the Pet Food Products provide "targeted nutrition," and/or as more fully described below, has guaranteed the Pet Food Products for taste and nutrition.  As alleged herein, Defendant's marketing and advertising of the Pet Food Products is false, deceptive, and misleading to reasonable consumers because the Pet Food Products contained dangerous or toxic levels of aflatoxin, and thus were not as advertised, represented, or guaranteed.  The Pet Food Products were not suitable nor safe for their intended purpose, namely, feeding dogs and cats healthy, nutritious food.

6.     Plaintiffs and Class members would not have purchased the Pet Food Products had they known the Pet Food Products contained, or might have contained, dangerous or toxic levels of aflatoxin that could harm or kill their pets.

7.     Plaintiff brings this action and asserts claims on his own behalf and all others similarly situated for negligence, breach of express warranty, breach of implied warranty, product liability, and unjust enrichment.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Class exceeds 100; and many members of the proposed Class are citizens of different states than the Defendant.

9.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in the State of Indiana, regularly conducts business in this Judicial District, and has extensive contacts with this forum.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District and is headquartered in this District.

## PARTIES

11.     Plaintiff is a resident of West Monroe, Louisiana.  He breeds Beagles for hunting and until they were killed off by Defendant's Sportmix product, had a time-honored blood line of Beagles that he owned and sold.  In or around December of 2020 all four of his dogs that ingested the Sportmix food died.  There were three male dogs, Rerun, Bandit and Slim and one female dog, Bonnie.  All became lethargic, lost their appetites, had runny stools and died within days.  Due to the speed with which the illness affected his pets, he did not have the opportunity to get them to the veterinarian.

12.     Defendant is a corporation organized under the laws of Indiana.  Midwestern's principal place of business is located at 9634 Hedden Road, Evansville, Indiana 47725.

## FACTUAL ALLEGATIONS

### Defendant Markets and Sells Pet Foods as Premium Quality Foods

13.     Midwestern is a leading North American producer of Pet Food Products sold in the United States and around the world.  Upon information and belief, it produces and sells hundreds of thousands of containers of cat and dog food annually.

14.     Midwestern holds itself out to the public as a producer of safe, nutritious, and high quality pet food.  As part of its marketing and sales, Midwestern makes numerous representations and express warranties about the quality of its Pet Food Products and its manufacturing facilities and processes.

15.     Midwestern manufactures, produces, markets, distributes, and/or sells dog food products under various brand names, including "Sportmix."

16.     Midwestern promotes and prices the Products as "premium" dog food by, among other things, uniformly labeling their products as providing "Targeted Nutrition" for dogs and cats. The product labels further uniformly represent that the pet foods are "100% Guaranteed Taste & Nutrition."

17.     Midwestern claims that its Pet Food Products "are subject to rigorous testing in independent laboratories to ensure quality nutrition and safety."[2] "We create our own nutritious dry recipes and treats, selectively choose our ingredients, and prepare our foods with care in our family-owned kitchens."[3]

---

[2] *About Us*, MIDWESTERN PET FOODS, https://midwesternpetfoods.com/#about-us (last visited Feb. 12, 2021).
[3] Id.

18.     Midwestern represents that its Sportmix Premium Energy Plus dog food is "formulated for highly active dogs needing a maximum high level of energy" and "to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for maintenance."[4]

19.     Midwestern similarly represents that its Sportmix Premium High Energy recipe is "formulated for adult dogs who require extra protein and fat in their diet due to their level of activity or living environment" and "to meet the nutrition levels established by the AAFCO Dog Food Nutrient Profiles for maintenance."[5]

20.     Midwestern represents that its Sportmix Premium Maintenance is "formulated for adult dogs who require a lower level of energy and protein due to their activity level or living environment" and "to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for maintenance."[6]

21.     Midwestern represents that its Sportmix Premium Stamina dog food is "formulated for physically active dogs that require a sustained level of endurance" and "to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for maintenance."[7]

22.     Midwestern represents that its Sportmix Premium Puppy Small Bites dog food is "formulated for puppy's first full year of growth" and "to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for lactation/gestation and growth of dogs."[8]

---

[4]   *SPORTMiX® Energy Plus*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/premium-formulas/energy-plus-adult-mini-chunk/ (last visited Feb. 12, 2021).
[5]   *SPORTMiX® High Energy*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/premium-formulas/high-energy-adult-mini-chunk/ (last visited Feb. 12, 2021).
[6]   *SPORTMiX® Maintenance Adult Mini Chunk*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/premium-formulas/maintenance-adult-mini-chunk/ (last visited Feb. 12, 2021).
[7] *SPORTMiX® Stamina Adult Mini Chunk*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/premium-formulas/stamina-adult-mini-chunk/ (last visited Feb. 12, 2021).
[8]   *SPORTMiX® Puppy Small Bites*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/premium-formulas/puppy-small-bites/ (last visited Feb. 12, 2021).

23.     Midwestern represents that its Sportmax Original High Protein dog food is "designed to provide extra energy for highly active dogs requiring more protein in their diet."[9]

24.     Midwestern represents that its Sportmax Original Bite Size dog food is "formulated to provide your normally active dog with 100% complete and balanced nutrition for a healthy life" and "to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for maintenance."[10]

25.     Midwestern represents that its Sportmix Original Recipe cat food is "formulated to ensure 100% complete and balanced nutrition for your cat, supplying essential nutrients needed to promote strong muscles and bones, a glossy coat and bright eyes" and to "meet the nutrition levels established by the AAFCO Dog [sic] Food Nutrient Profiles for all life stages."[11]

26.     Midwestern represents that its Sportmix Gourmet Mix cat food is "[f]ormulated with a special balance of protein, fat, vitamins and minerals" to "suppl[y] a 100% complete and balanced diet" and "meet the nutritional levels established by the AAFCO Dog [sic] Food Nutrient Profiles for all life stages."[12]

27.     Because of these quality promises, consumers were willing to pay a premium price for Sportmix Products, and Sportmix Products are often much higher than the cost of similar dog foods.

---

[9]     *SPORTMiX® High Protein*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/original-formulas/high-protein/ (last visited Feb. 12, 2021).

[10] *SPORTMiX® Bite Size*, MIDWESTERN PET FOODS, https://www.sportmix.com/dog-food/original-formulas/bite-size/ (last visited Feb. 12, 2021).

[11] *SPORTMiX® Original Recipe Cat Food*, MIDWESTERN PET FOODS, https://www.sportmix.com/cat-food/original-recipe/ (last visited Feb. 12, 2021) (original states "AAFCO *Dog* Food Nutrient Profile" as opposed to for *cats*).

[12] *SPORTMiX® Gourmet Mix Cat Food,* MIDWESTERN PET FOODS, https://www.sportmix.com/cat-food/gourmet-mix/ (last visited Feb. 12, 2021) (original states "AAFCO *Dog* Food Nutrient Profile" as opposed to for *cats*).

**Sportmix Products Tainted With Aflatoxin**

28.     As set forth above, Midwestern announced a recall of certain lots of Sportmix Products after the U.S. Food and Drug Administration ("FDA") was alerted about reports of at least 28 dogs that died and eight that fell ill after consuming Sportmix Products.[13] The recalls were announced on December 30, 2020 and January 11, 2021.  The FDA recall indicates that, as of January 21, 2021, the approximate number of pets believed to have died is now at least 110 and that at least 210 pets are believed to have become sick after consuming Sportmix Products. [14]

29.     Multiple product samples were tested by the Missouri Department of Agriculture and found to contain very high levels of aflatoxin.[15] The following state Departments of Agriculture are cooperating with the FDA as of January 26, 2021:  Missouri, Oklahoma, Arkansas, Kansas, Kentucky, Louisiana, New Mexico, Oregon, Texas, and Washington.[16]

30.     Midwestern publicly acknowledged that affected Pet Food Products were distributed nationally to online distributors and retail stores.  Therefore, consumers nationally have been affected.

**The Products Harmed and Killed Pets**

31.     Aflatoxin is a toxin produced by the mold Aspergillus flavus and at high levels it can cause illness and death in pets.  The toxin can be present even if there is no visible mold.

32.     Pets are highly susceptible to aflatoxin poisoning because, unlike people, who eat a varied diet, pets generally eat the same food continuously over extended periods of time.  If a

---

[13] U.S. Food & Drug Admin., FDA Alert:  Certain Lots of Sportmix Pet Food Recalled for Potentially Fatal Levels of Aflatoxin (Jan. 26, 2021), https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin.
[14] Id.
[15] Id.
[16] Id.

pet's food contains aflatoxin, the toxin could accumulate in the pet's system as they continue to eat the same food.

33.     Pets with aflatoxin poisoning may experience symptoms such as sluggishness, loss of appetite, vomiting, jaundice (yellowish tint to the eyes, gums or skin due to liver damage), and/or diarrhea.  In some cases, this toxicity can cause long-term liver issues and/or death.  Some pets suffer liver damage without showing any symptoms.

34.     According to the FDA, pet owners whose pets have been eating the recalled products should contact their veterinarians, especially if they are showing signs of illness.[17]

35.     Every purchaser of the recalled Products lost money by purchasing toxic food that was misrepresented.  They additionally incurred costs associated with replacing the Products with a safe pet food (including sales tax or similar taxes); and incidental transaction costs associated with purchasing safe, non-contaminated pet food and/or in securing a refund for the Products.

36.     In addition, Plaintiff and Class members also incurred damages related to the sickness and/or death of their pets.  These expenses include the substantial costs associated with obtaining veterinarian services, medications, and treatment, as well as expenses related to the burial/disposition and/or replacing beloved pets.  These Class members also endured the distress of losing a beloved pet.

37.     Defendant manufactured, marketed, advertised, warranted, and sold, either directly or through its authorized distribution channels, the Products that caused Plaintiff's and the Class members' damages.  Plaintiff and the Class members have been or will be forced to pay for damage caused by the aflatoxin in the Products.

---

[17] Id.

38.     Defendant knew or should have known about the risks of injury, illness, or death posed by the Products before it sold them to Plaintiff and Class members who ultimately fed the Products to their pets.

39.     In conjunction with each sale, Defendant marketed, advertised, and warranted that the Products were fit for the ordinary purpose for which such goods are used, i.e., consumption by household pets, and were free from defects.

40.     The Products were intended to be placed in the stream of commerce and distributed, offered for sale, and sold to Plaintiff and the Class members throughout the United States.

## CLASS ACTION ALLEGATIONS

41.     Pursuant to Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a proposed class defined as follows:

**The Nationwide Class of Purchasers.**  All persons who purchased Sportmix Products in the United States within the Relevant Time Period.

42.     Plaintiff also seeks certification of a class of pet owners who are defined as follows:

**The Nationwide Class of Affected Pet Owners.**  All persons who owned cats or dogs and purchased Sportmix Products in the United State within the Relevant Time Period who had pets become sick and/or die as a result of ingestion of the pet food.

43.     Plaintiff reserves the right to alter the Class definitions as they deem necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Indiana, and applicable precedent allow.

44.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as

individual Class members would use to prove those elements in individual actions alleging the same claims.

45.     Numerosity - Rule 23(a)(1):  The size of the Nationwide Class is so large that joinder of all Class members is impracticable.  Due to the nature of Defendant's business and the size of the recalls, Plaintiff believes there are hundreds or thousands of Class members geographically dispersed throughout the United States.

46.     Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3):  There are questions of law and fact common to the Nationwide Classes of those who purchased the Pet Food Products and those that purchased the Pet Food Products and had their pets become sick and/or die as a result of ingestion of the Pet Food Products.  These questions predominate over any questions affecting only individual Class members.  Common legal and factual questions include but are not limited to:

a.     whether Defendant sold Pet Food Products containing aflatoxin;

b.     whether Defendant advertised, represented, or held itself out as producing or manufacturing Pet Food Products that were safe for pets to consume;

c.     whether Defendant expressly warranted the Products;

d.     whether Defendant purported to disclaim any express warranty;

e.     whether Defendant purported to disclaim any implied warranty;

f.     whether any limitation on warranty fails to meet its essential purpose;

g.     whether Defendant intended for Plaintiff, the Class members, and others to purchase the Products;

h.     whether Defendant intended or foresaw that Plaintiff, the Class members, and others would feed the Products to their pets;

i.   whether and in what manner Defendant was negligent in manufacturing or processing the Products;

j.   whether using the Products as intended (to feed pets) resulted in injury or damages to the injured pet Class members;

k.   whether Defendant's negligence proximately caused loss, injury, or damages to the Class members;

l.   whether the Class members suffered direct losses or damages;

m.   whether the Class members suffered indirect losses or damages;

n.   whether the Class members are entitled to actual or other forms of damages and other monetary relief; and

o.   whether the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

47.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members.  Similar or identical violations of law, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.  Moreover, the common questions will yield common answers that will substantially advance the resolution of the case.

48.   <u>Typicality - Rule 23(a)(3)</u>:  Plaintiff's claims are typical of the claims of the Class members because Defendant injured all Class members through the uniform misconduct described herein; all Class members suffered injury due to Defendant's defective Products; and Plaintiff seeks the same relief as the Class members.  Furthermore, there are no defenses available to Defendant that are unique to Plaintiff.

49.     <u>Adequacy of Representation - Rule 23(a)(4)</u>:   Plaintiff is a fair and adequate representative of the Class members because Plaintiff's interests do not conflict with the Class members' interests.  Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.   Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation.  Plaintiff and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

50.     <u>Superiority - Rule 23(b)(3):</u>  The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for reasons including but not limited to the following:

a.      The damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct.

b.      Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them.  Even if Class members themselves could afford such individual litigation, the court system could not.  Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments.  By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

c.      The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.

d.      The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications or that would substantively impair or impede their ability to protect their interests.

51.     Notice:  Plaintiff and his counsel anticipate that notice to the proposed Class members will be effectuated through recognized, Court-approved notice dissemination methods which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CAUSES OF ACTION

### COUNT 1
### NEGLIGENCE
### (On behalf of the Nationwide Classes)

52.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

53.     Plaintiff brings this claim for negligence against Defendant on behalf of each member of the Nationwide Class of purchasers and each member of the Nationwide Class of affected pet owners.

54.     Plaintiff and the Class members, as pet owners, were within the foreseeable zone of risk of injury or other losses in the event Defendant's Products were defective or contaminated or otherwise negligently formulated, manufactured, or produced, which risks Defendant knew or should have known.

55.    Defendant owed Plaintiff and the Class members a duty to distribute only safe, non-contaminated products for consumption by Plaintiff's and the Class members' household pets.

56.    Through its failure to exercise due care, Defendant breached this duty by producing, processing, manufacturing, and offering for sale the Products in a defective condition that was unhealthy and injurious to Plaintiff's and the Class members' pets.

57.    Additionally, Defendant breached its duty of care to Plaintiff and the Class members by failing to use sufficient quality control, perform adequate testing, proper manufacturing, production, or processing, and by failing to take sufficient measures to prevent the Pet Food Products from being offered for sale, sold, or fed to pets.

58.    Defendant knew, or in the exercise of reasonable care should have known, that the Products presented an unacceptable risk of harm to the pets of Plaintiff and the Class members and would result in damage that was foreseeable and reasonably avoidable.

59.    Defendant, upon information and belief, also negligently carried out its recall by not recalling all of the Pet Food Products manufactured in the Chickasaw, Oklahoma plant in the relevant time period where it knew, or should have known, that other lots of  pet foods manufactured there were tainted with aflatoxin.

60.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class members have suffered loss and damages.

61.    Therefore, Plaintiff on his own and for the Nationwide Classes prays for relief as set forth below.

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Nationwide Classes)**

62.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

63.     Defendant warrants its products as "100% guaranteed for taste and nutrition."

64.     Defendant breached this express warranty by selling to Plaintiff and Class members Midwestern known to suffer from the aflatoxin contamination so that it was not nutritious, not of high quality, and which was unsuited for its ordinary and intended purpose, while refusing to cover the cost of medical and veterinary bills resulting from the contamination.

65.     As a result of Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to veterinary bills, other medical expenses, and replacement pet food.

66.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

67.     Therefore, Plaintiff on his own and for the Nationwide Classes prays for relief as set forth below.

**COUNT 3**
**BREACH OF IMPLIED WARRANTY**
**(On behalf of the Nationwide Classes)**

68.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

69.     A warranty that the Prioducts were in merchantable condition is implied by law.

70.     The Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which pet food is used.  Specifically, the Products are inherently defective in that they are contaminated with a potent fungal toxin and thus cannot safely be fed to pets.

71.     As a direct and proximate result of Defendant's breaches of the implied warranty of merchantability, Plaintiff and other Class members have been damaged ina n amount to be proven at trial.

72.     Therefore, Plaintiff on his own and for the Nationwide Classes prays for relief as set forth below.

**COUNT 4**
**STRICT PRODUCT LIABILITY**
**(Defective Design/Manufacture and Failure to Warn)**
**(On behalf of the Nationwide Class of Affected Pet Owners)**

73.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

74.     Plaintiff brings this claim for strict product liability against Defendant on behalf of each member of the Nationwide Class of Affected Pet Owners.

75.     Defendant is the producer, manufacturer, and/or distributor of the Pet Food Products.

76.     Defendant's Pet Food Products left Defendant's possession in an unreasonably dangerous condition that was not safe for the uses reasonably intended, namely, to feed pets.

77.     Defendant's Pet Food Products reached Plaintiff and the Nationwide Class of Affected Pet Owners without a substantial change in condition.

78.     The Pet Food Products, which, among other potential defects, contained aflatoxin, were in an unreasonably dangerous condition because (a) they failed to perform as safely as an

ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable to Defendant; and (b) because the foreseeable risks of using the Pet Food Products outweighed the benefits of their use.  Defendant had a duty to warn purchasers of the health risks posed by their product in an effective manner.  Such warnings should have been placed on the packaging or otherwise been placed in a way calculated to give reasonable fair warning to consumers.

79.     Plaintiff and the Nationwide Class of Affected Pet Owners used the products as intended and in a manner reasonably foreseeable to Defendant, as pet food.

80.     As the direct and foreseeable result of the defective condition of the Products as produced, manufactured, and/or distributed by Defendant, and as a consequence of defendant's failure to warn of the health risks, Plaintiff and the Nationwide Class of Affected Pet Owners suffered damages, including, but not limited to:  veterinarian expenses, cremation expenses, and expenses for the replacement cost of their pets.

**81.**     Therefore, Plaintiff prays for relief as set forth below.

**COUNT 5**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Classes)**

82.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

83.     Plaintiff brings this claim for unjust enrichment against Defendant on behalf of the Nationwide Class of Purchasers and the Nationwide Class of Affected Pet Owners.

84.     As a direct, proximate, and foreseeable result of Defendant's acts and otherwise wrongful conduct, Plaintiff and the Class members conferred a benefit on Defendant and

consequently suffered damages. Defendant profited and benefited from the sale of the Products, even as the Products caused Plaintiff and the Class members to incur damages.

85.     Defendant voluntarily accepted and retained these profits and benefits, derived from Plaintiff and the Class members, with full knowledge and awareness that as a result of Defendant's wrongdoing, consumers including Plaintiff and the Class members were not receiving Products of the quality, nature, fitness, or value that had been represented by Defendant or that reasonable consumers expected. Plaintiff and the Nationwide Class members purchased pet food that they expected would be safe and healthy for their pets and instead have now had to endure the serious injury, illness, veterinary expenses, and/or loss of life of their beloved pets.

86.     Defendant continues to possess monies paid by Plaintiff and the Nationwide Class members to which Defendant is not entitled to have received.

87.     Under the circumstances it would be inequitable for Defendant to retain the benefits conferred upon it and Defendant's retention of these benefits violates fundamental principles of justice, equity, and good conscience.

88.     Plaintiff and the Class members hereby seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

89.     Therefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Nationwide Classes, respectfully requests the Court to enter an Order:

A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.      declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.      declaring that Defendant has committed the violations of law alleged herein;

D.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

E.      providing for any and all equitable monetary relief the Court deems appropriate;

F.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

G.      awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

H.      awarding pre- and post-judgment interest to the extent the law allows; and

I.      providing such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

Blake P. Holler
Blake P. Holler Atty. No. 30676-84
Scott S. Morrison, Atty. No. 11633-49
KRIEG DEVAULT LLP
12800 N. Meridian Street, Suite 300
Carmel, IN  46032
Tel:  (317)  566-1110
Fax:  (317) 636-1507
bholler@kdlegal.com
smorrisson@kdlegal.com

-and-

Bruce E. Newman
BROWN, PAINDIRIS & SCOTT, LLP
747 Stafford Avenue
Bristol, CT  06010
Tel.:  (860) 583-5200
Fax:  (860) 589-5790
bnewman@bpslawyers.com

(*Pro Hac Vice forthcoming*)

*Attorneys for Plaintiff and the Putative
Class Members*